# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SIMONE V.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 19-2577-JWL** |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614

of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c (hereinafter the Act).  Finding

no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that

judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

AFFIRMING the Commissioner's final decision.

## I.    Background

Plaintiff protectively filed an application for SSI benefits on May 5, 2017.  (R. 16,

211-16).  After exhausting administrative remedies before the Social Security

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating her mental impairments at step three of the sequential evaluation process, erred in evaluating the medical opinions and prior administrative medical findings, and erred in his residual functional capacity (RFC) assessment.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court notes that Plaintiff's argument her mental impairments meet a Listing relies upon the medical opinions of Ms. Arroyo, LPC, Plaintiff's counselor, and that evaluation of the medical opinions and prior administrative medical findings is intertwined with the RFC assessment.  Therefore, the court finds it necessary to address the ALJ's evaluation of the medical opinions and prior administrative medical findings before addressing Plaintiff's remaining claims.

## II.    Evaluation of the Medical Opinions and Prior Administrative Medical Findings

Plaintiff claims the ALJ erroneously discounted Ms. Arroyo's opinion.  (Pl. Br. 20).  She argues he erred in using the fact Plaintiff had taken care of her mother's finances for fifteen years in discounting Ms. Arroyo's opinion because her mother had

passed away almost a year before Plaintiff claimed she became disabled.  (Pl. Br. 20).

Plaintiff concludes her argument,

> Ms. Arroyo's opinion is buttressed by numerous treatments notes from
> Wyandot Mental Health Center.  Because the substantial evidence of record
> does not support the ALJ's finding that Ms. Arroyo's opinion was not
> supported by the record as a whole; the ALJ erred by failing to afford
> controlling weight to the well-supported opinion of treating therapist, Ms.
> Arroyo.

Id. at 20-21 (citation to the record omitted).

The Commissioner points out that the procedures for evaluating medical opinions

and prior administrative medical findings has changed for claims filed after March 27,

2017 as was Plaintiff's claim in this case.  (Comm'r Br. 7-10).  He argues that "the law

Plaintiff relies on has been superseded and abrogated."  Id. at 16.  He argues the record

evidence supports the reasons given to discount Ms. Arroyo's opinions and the state

agency psychological consultants found she was not as limited as did the ALJ.  Id. at 17.

He notes the ALJ found the state agency pstchologists' opinions were partially

persuasive, tempered their findings, and appropriately reached a reasonable middle

ground between their opinions and Ms. Arroyo's opinions.  Id. at 18.

### A.    Standard for Evaluating Medical Opinions and Prior Administrative Medical Findings

Effective March 27, 2017, the regulations changed the definition of "acceptable

medical source" to add licensed audiologists for certain impairments, and licensed

Advanced Practice Registered Nurses and licensed Physician Assistants within their

licensed scope of practice.  Compare 20 C.F.R. § 416.902 (2018), with 20 C.F.R.

§§ 416.902, 416.913 (2016).  In the new regulations, the Commissioner found that certain

evidence, including decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner, "is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, [and the SSA] will not provide any analysis about how we considered such evidence in our determination or decision."  20 C.F.R. § 416.920b(c) (2018).

In the new regulations, the Commissioner explicitly delineated five categories of evidence including objective medical evidence, medical opinion, other medical evidence, evidence from nonmedical sources, and prior administrative medical findings.  20 C.F.R. § 416.913 (2018).  The regulations define objective medical evidence as "medical signs, laboratory findings, or both."  20 C.F.R. § 416.913(a)(1) (2018).  "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 416.913(a)(3) (2018).  "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim."  20 C.F.R. § 416.913(a)(4) (2018).

The regulation defines "medical opinion" and "prior administrative medical finding:"

> (2) Medical opinion.  A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions …

6

(i) Medical opinions in adult claims are about impairment-related limitations and restrictions in:

(A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

\* \* \*

(5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:

(i) The existence and severity of your impairment(s);

(ii) The existence and severity of your symptoms;

(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

\* \* \*

(v) … your residual functional capacity;

(vi) Whether your impairment(s) meets the duration requirement; and

(vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. § 416.913(a)(4) (2018).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 416.920c (2018). The regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a) (2018). The regulation provides that the SSA will consider each medical source's opinions using five factors, supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(a)(c)(1-5) (2018). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings for each source but not for each opinion of that source separately. 20 C.F.R. § 416.920c(b)(1) (2018). It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 416.920c(b)(2) (2018). The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not

exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20 C.F.R. § 416.920c(b)(3) (2018).  Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources.  20 C.F.R. § 416.920c(d) (2018).

## B.      The ALJ's Evaluation

The ALJ evaluated the medical opinions and prior administrative medical findings and explained how he credited them, noting the state agency psychological consultants are familiar with the regulations and the disability determination process, they have specialized training and expertise, and most importantly they based their opinions on a comprehensive review of the record, their opinions are consistent with the record, and they provided narrative explanations of their conclusions.  Id. at 25.  He concluded:

> However, the claimant has continued to struggle with anxiety and both treatment notes and testimony verify that I have made social functioning a marked limitations [sic].  Because the opinions of the nonexamining State agency medical and psychological consultants are essentially supported by and consistent with the weight of the medical and nonmedical evidence of record, I find them to be partially persuasive.

(R. 25).  He also explained his evaluation of the opinion of Plaintiff's counselor, Ms. Arroyo, LPC, who:

> opined the claimant has marked and extreme limitations (Ex. 5F/7F [(R. 481-84, 597-98)]).  While the medical record does show the claimant has severe psychological impairments that limit her functioning, the record does not support the level of restriction opined by Ms. Arroyo.  First, the record shows that the claimant is capable of managing funds because she took care of her mother's finances for 15 years.  The marked/extreme limitations noted in understanding are inconsistent with her ability to handle her mother's finances, and are also inconsistent with the claimant's testimony that she was able to live alone until a month ago when her friend and two children moved in with her.  This demonstrates that the claimant is

able to interact and live with the friend.  In addition, the claimant also reported that she utilized the Internet to interact on Facebook, and that she was able to drive, and go to the store on a weekly basis (at night to avoid crowds.)  Melanie Arroyo is also an unacceptable source by Agency standards.  Therefore, I find her opinions only partially persuasive.

(R. 24-25).

### C.   Analysis

The ALJ's evaluations above reveals he credited the psychological consultants' opinions because of the qualifications, experience and narrative explanations of the state agency psychological consultants.  Plaintiff's continued struggle with anxiety led him to find a marked limitation in social functioning but their opinions were otherwise supported by and consistent with the record evidence and found to be persuasive to that extent. While he agreed with Ms. Arroyo's opinion that Plaintiff has "severe psychological impairments that limit her functioning," he did not find the record evidence supported or was consistent with the marked and extreme limitations she opined.  He found those limitations inconsistent with Plaintiff's ability to handle her mother's finances and with her ability to live alone until recently.  He found her ability to live with a friend, to interact on facebook, and to go to the store (although at night) on a weekly basis were inconsistent with Ms. Arroyo's opinion of extreme limitations in interacting.

The regulations explain that an extreme limitation means that an individual is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(e) (emphasis added).  In finding Plaintiff markedly limited in interacting with others, the ALJ found she is able to function in this area although she is seriously limited.  See, 20 C.F.R., Pt. 404, Subpt. P,

10

App. 1 § 12.00(F)(2)(f) ("Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.") (emphasis added).

Plaintiff's argument that her mother died before her alleged onset date ignores that Ms. Arroyo stated that Plaintiff can manage any benefits received in her own best interest and inserted a note in the margin that Plaintiff "managed her mother's finances during the fifteen (15) years that she served as care-taker," and the ALJ accorded that note weight when discussing Ms. Arroyo's opinion, he stated, "the record shows that the claimant is capable of managing funds because she took care of her mother's finances for 15 years." Although Plaintiff's mother died before Plaintiff's alleged onset date and before she applied for benefits, it was not error for the ALJ to find Plaintiff retained that ability thereafter, since Plaintiff's treating mental healthcare source also relied upon that fact six months earlier, almost a year after her alleged onset date, and almost two years after Plaintiff's mother passed away.   Plaintiff does not allege error in any of the ALJ's other reasons for discounting Ms. Arroyo's opinion and does not even discuss the ALJ's evaluation of the state agency psychologists' opinions.  Nonetheless, the court has considered the ALJ's reasons and finds them supported by the record evidence.

Plaintiff's remaining arguments are likewise unavailing.  As the Commissioner points out her argument that the ALJ should have accorded controlling weight to Ms. Arroyo's opinion is based upon regulations which are no longer in effect.  Her argument that Ms. Arroyo's opinion is buttressed by treatments notes from Wyandot Mental Health Center and the substantial evidence of record does not support the ALJ's finding fairs no

11

better.  Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff uses the phrase "the substantial evidence of record" six times each in her Social Security Brief and in her Reply Brief and her usage implies an incorrect standard of review.  There is no such thing as the substantial evidence of record.  As noted supra at 2, "substantial evidence" is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Perales, 402 U.S. at 401; see also, Wall, 561 F.3d at 1052; Gossett, 862 F.2d at 804.  As noted above, the evidence in a case may be viewed differently by different, reasonable, individuals, leading them to two inconsistent conclusions.  So long as the ALJ's conclusion is reasonable and is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," the court must affirm it.  Such is the case here.

## III.    The Step Three Evaluation

Plaintiff argues the ALJ erred in finding her condition does not meet the criteria of Listing 12.04 and/or 12.06.[2]  Plaintiff points out that the ALJ found the criteria of Listing 12.06 paragraph A are met and found that she has a marked limitation in interacting with others—meeting one criterion of the paragraph B criteria.  (Pl. Br. 13).  She points out that if the ALJ found a marked limitation in one of the other three broad areas of mental functioning, the paragraph B criteria would be met, her condition would meet Listing 12.06, and she would be per se disabled at step three of the sequential evaluation process.  (Pl. Br. 13).  She then argues that she has marked limitations in each of the other three broad areas of mental functioning.  Id. at 14-17.

The Commissioner argues Plaintiff does not point to error in the ALJ's rationale or findings but points to other evidence based on her own statements, which are insufficient to equal a Listing.  (Comm'r Br. 12-13).  The Commissioner argues that Plaintiff merely asks the court to reweigh the evidence and substitute its judgment for the ALJ's, something it may not do.  Id. at 13-14.

In her Reply Brief, Plaintiff argues that the ALJ did not look at "the substantial evidence of record" but picked and chose "small selections of information from [Plaintiff's] Adult Functioning Report and ignored the explanation of her statements."

---

[2] The heading of this section of Plaintiff's Brief suggests the ALJ erred in failing to find Plaintiff's condition meets the criteria of Listing 12.04 and/or Listing 12.06.  (Pl. Br. 12).  However, her argument only addresses the criteria of Listing 12.06.  Id. at 12-13.  Both Listings include the "paragraph B" criteria and the court finds those criteria are not met, and because Plaintiff does not argue her condition equals a Listing, the court need not address Listing 12.04.  Plaintiff's Reply Brief abandons any Listing 12.04 argument.

(Reply 1-2).  She argues the ALJ never mentioned the intense weekly to bi-weekly treatment she received between May 2017 and the hearing in September 2018.  Id. at 2.

### A.     Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers per se disabling.  20 C.F.R. § 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, Plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that manifests only some of [the Listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'"  Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).  The listings "streamlin[e] the decision process by identifying those claimants whose

14

medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

### B.    The ALJ's Findings

As are at issue here, the ALJ explained his bases for finding a moderate limitation in understanding, remembering, and applying information; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself. In understanding, remembering, or applying information, the ALJ noted that claimant alleges problems with understanding, but she "is able to use reasoning and judgment to make decisions and follow through with medical advice." (R. 20). In concentrating, persisting, or maintaining pace, he recognized Plaintiff has some issues with concentration, but she "is able to maintain conversation and is on no medication for a concentration disorder such as ADHD." Id. Finally, in adapting or managing oneself, he found she can make plans, maintain hygiene although having some issues with bathing and she can recognize hazards. Id. at 21. The ALJ found that Plaintiff "does have some issues including marked limitations in social functioning [but] does not have two marked or extreme limitations in functioning and is able to perform simple routine tasks." Id. at 24.

### C.    Analysis

The court notes that Plaintiff's explanation of the severity of each of the three broad mental functional areas in which the ALJ found she has moderate limitations but in which she alleges the evidence shows marked limitations cites to the 2016 edition of the

Code of Federal Regulations.  (Pl. Br. 14-16, nn.16-21).  Plaintiff provides no justification for this and the court finds none.  Moreover, the court's review of Plaintiff's citations in the 2016 C.F.R. does not reveal the inabilities which she claims demonstrate a marked limitation in each of these areas.  In any case, Plaintiff's claim was filed in May 2017 and the ALJ's decision in this case was issued November 26, 2018.  (R. 16, 28).  Therefore, the ALJ applied the 2018 edition of the C.F.R. as summarized below, and the court will do the same in its review.

The four broad mental functional areas—the paragraph B criteria—are rated using a five-point rating scale of how well the claimant can function "independently, appropriately, effectively, and on a sustained basis" in each broad mental area:  no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00(F)(2).  The regulations define each limitation:

> a. No limitation (or none). You are <u>able to function</u> in this area independently, appropriately, effectively, and on a sustained basis.
>
> b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is <u>slightly limited</u>.
>
> c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is <u>fair</u>.
>
> d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is <u>seriously limited</u>.
>
> e. Extreme limitation. You are <u>not able to function</u> in this area independently, appropriately, effectively, and on a sustained basis.

<u>Id.</u> (emphases added).

16

Plaintiff does not demonstrate error in the ALJ's findings in each of these three broad areas of mental functioning but complains about the examples he used in support of his findings.  In understanding, remembering, or applying information, the ALJ found Plaintiff "is able to use reasoning and judgment to make decisions and follow through with medical advice" (R. 20), but Plaintiff does not show error in these findings.  Plaintiff argues that a limitation in this area is marked if one cannot "use reasoning to make work-related decisions" (Pl. Br. 14), but she does not point to record evidence suggesting she is unable to use reasoning and judgment and to follow through on decisions.  In concentrating, persisting, or maintaining pace, the ALJ found Plaintiff "is able to maintain conversation and is on no medication for a concentration disorder such as ADHD," but Plaintiff does not address these findings.  (R. 20).

In adapting or managing oneself, the ALJ found Plaintiff can make plans, maintain hygiene although having some issues with bathing, and she can recognize hazards.  Id. at 21.  In this area, Plaintiff acknowledged the ALJ's finding she can make plans and maintain hygiene and points to her adult function report wherein she reported "spending the majority of each day in bed," "wearing the same clothes for days, having to make herself shower, and letting her hair go unkempt."  (Pl. Br. 17) (citing R. 280-81).  Even here, however, Plaintiff does not point to evidence demonstrating she cannot make plans or recognize hazards as the ALJ found.  Moreover, the ALJ recognized Plaintiff has some issues with bathing and that she has a moderate limitation (functioning is only fair) in this area and Plaintiff does not show that the activities to which she appeals demonstrate her functioning in this area independently, appropriately, effectively, and on a sustained basis

17

is <u>seriously limited</u>.  Giving the Commissioner's decision the deference it is due—and not reading the Listing expansively at step three, the court finds no error.

## IV.   Residual Functional Capacity

Plaintiff's argument that the RFC assessed is erroneous is based on her allegations of error in evaluating Ms. Arroyo's opinion and on her allegations of error in evaluating her limitations in the four broad mental functional areas.  Having found no error therein, the court finds no error in the RFC assessment.  To the extent Plaintiff's arguments ask the court to reweigh the evidence and substitute its judgment for that of the Commissioner, it reminds Plaintiff that is contrary to the court's task to determine whether substantial record evidence supports the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated September 1, 2020, at Kansas City, Kansas.



s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**

18